2001 SD 130

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Donald D. SHEEHY, Defendant and Appellant.**

**No. 21784.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 28, 2001.

Decided Oct. 31, 2001.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

John M. Grossenburg, Winner, South Dakota, Attorney for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Donald Sheehy (Sheehy) was convicted of one count of exceeding the possession limit of walleye fish pursuant to SDCL 41–14–32. We affirm.

## FACTS

[¶ 2.] On November 7, 1999, conservation officer, Jack Freidel, received an anonymous tip that Sheehy had more fish than he could lawfully possess. The caller provided that Sheehy was at the Cedar Shore Resort, in Lyman County, South Dakota, and also gave Sheehy's license number of his vehicle.

[¶ 3.] Officer Freidel drove to Cedar Shore Resort where he located a vehicle registered to Sheehy parked in the parking lot. Soon thereafter, Officer Freidel observed a man place some items into Sheehy's vehicle. Officer Freidel approached the man and learned that the man was, in fact, Sheehy. He asked Sheehy if he could look at Sheehy's game. Sheehy replied that his game was located in coolers inside a freezer in the resort's restaurant.

[¶ 4.] Officer Freidel followed Sheehy to the restaurant and they entered the restaurant's freezer. Upon Sheehy identifying two of his coolers as containing game, Officer Freidel asked to look inside. Sheehy did not object to Officer Freidel's request. Inside the coolers, Officer Freidel found sixteen walleyes, eight more than that allowed under SDCL 41–14–32.

[¶ 5.] Sheehy filed a motion to suppress the search of his coolers. The trial court denied Sheehy's motion, ruling that the search of the two coolers did not violate Sheehy's Fourth Amendment rights. Sheehy appeals raising this sole issue:

Whether the trial court, in denying Sheehy's motion to suppress, erred because the anonymous tip received by Officer Friedel lacked indicia of reliability.

## STANDARD OF REVIEW

[¶ 6.] Our review of a motion to suppress based on an alleged violation of a constitutionally protected right is a question of law examined de novo. *See State v. Hirning*, 1999 SD 53, ¶ 9, 592 N.W.2d 600, 603; *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996) (standard of review for questions under the Fourth Amendment); *United States v. Khan*, 993 F.2d 1368, 1375 (9th Cir.1993). We review findings of fact under the clearly erroneous standard. *See State v. Almond*, 511 N.W.2d 572, 573–74 (S.D.1994). Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610.

## DECISION

[¶ 7.] Sheehy's basic argument is that the anonymous tip received by Officer Friedel was insufficient to legally justify a Fourth Amendment search and seizure. Sheehy contends that the questioning by Officer Friedel in the resort parking lot was an impermissible stop because the anonymous tip was not reliable. He also contends that the subsequent search of his coolers was fruit of the poisonous tree.

[¶ 8.] First, the initial questioning of Sheehy by Officer Freidel was not a seizure within the purview of the Fourth Amendment. It is uncontroverted that Officer Freidel approached Sheehy and asked him a couple of questions regarding Sheehy's "luck" fishing. After Sheehy responded in the affirmative, Officer Freidel then asked to see his game. To make an inquiry such as this does not implicate the Fourth Amendment. Sheehy was never

told that he was not free to leave, nor did Officer Friedel frisk or "pat-down" Sheehy at any time prior to arrest. *Cf. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that a pat-down search is not unconstitutional if justified by reasonable suspicion).

[¶ 9.] Sheehy argues that the case of *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) supports his position that the "seizure" in the parking lot violated his Fourth Amendment rights. In *J.L.*, the defendant was frisked based on an anonymous tip. *Id.* 529 U.S. at 268, 120 S.Ct. at 1377, 146 L.Ed.2d 254. The United States Supreme Court held that such a *Terry* frisk required "reasonable suspicion" and an anonymous tip by itself is insufficient to satisfy the requisite legal justification. *Id.* 529 U.S. at 271, 120 S.Ct. at 1379, 146 L.Ed.2d 254. In the case before us, there was no search of Sheehy's person. It is imperative for police to conduct routine police investigation and question persons in public areas. While an ordinary citizen has the right to walk away, investigative questions by police, without a threat of police detention, does not translate into a constitutional infringement to those citizens who decide to answer. *See e.g., Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (holding random searches of consenting bus passengers were not unconstitutional); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (holding police could temporarily detain a suspicious-looking man who was attempting to purchase an airplane ticket, but could not take his plane ticket, driver's license or prevent him from leaving). In *Bostick*, the United States Supreme Court stated:

> Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in *Terry v. Ohio*, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, n.16 (1968): "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

501 U.S. at 433, 111 S.Ct. at 2385, 115 L.Ed.2d at 398 (internal citations omitted). Sheehy's argument that a finding of unreliability regarding the anonymous tip, however, misses the point. The anonymous tip did not lead to an involuntary detention of Sheehy. This Court fails to see any material similarities between *J.L.* and this case.

[¶ 10.] Second, the search of Sheehy's coolers did not violate his Fourth Amendment rights. The facts are clear: Sheehy showed Officer Friedel his coolers; Officer Friedel opened the coolers in Sheehy's presence; and Sheehy did not object to Officer Friedel's search of the coolers.

[¶ 11.] It has been said that consent to conduct a search satisfies the Fourth Amendment, thereby removing the need for a warrant or even probable cause. *State v. Fountain*, 534 N.W.2d 859, 864 (S.D.1995) (citing *State v. Zachodni*, 466 N.W.2d 624, 628 (S.D.1991)) (other citations omitted). To determine whether consent to a search is valid, "the totality of the circumstances must indicate that it was voluntarily given." *Almond*, 511 N.W.2d at 573 (citations omitted). While "the

state bears the burden of demonstrating consent ... [t]he presence or absence of consent is a question of fact" to be determined by the trial court. *Id.*

[¶ 12.] The trial court found that "with [Sheehy's] assistance and consent, the evidence was discovered in the freezer of the Cedar Shores [sic] Resort." The trial court's finding of consent is supported in the record. It is uncontroverted that Officer Freidel did not threaten or coerce Sheehy into giving his consent. Officer Freidel asked to see Sheehy's game, and then followed him to the freezer. It is also undisputed that when told the coolers were to be inspected, Sheehy "failed to object." * In fact, Sheehy does not argue that his consent was coerced or tainted in any way. Rather, he merely argues the subsequent search of the coolers was "fruit of the poisonous tree" stemming from the initial "seizure" in the parking lot. As previously mentioned, that argument is without merit. Regardless, the record supports a finding of consent.

[¶ 13.] We affirm.

[¶ 14.] SABERS, Acting Chief Justice, and KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 15.] MILLER, Retired Chief Justice, was a member of the Court at the time this action was submitted, but was disqualified and did not participate.

---

* It is important to note that it is not the burden of the state to "affirmatively prove that the subject of the search knew that he had the right to refuse consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 229, 93 S.Ct. 2041, 2049, 36 L.Ed.2d 854, 864 (1973). Rather, the key inquiry rests upon "whether in fact it was voluntary or coerced." *Id.,* 412 U.S. at 233, 93 S.Ct. at 2050, 36 L.Ed.2d at 866. As the trial court found Sheehy's consent to be free and voluntary, we will not disturb such finding unless clearly erroneous.