2002 SD 101

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lance KORTH, Defendant and Appellant.**

**State of South Dakota, Plaintiff and Appellee,**

v.

**Sheila Steele, Defendant and Appellant.**

**Nos. 22058, 22100.**

Supreme Court of South Dakota.

Argued May 30, 2002.

Decided Aug. 14, 2002.

---

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, for plaintiffs and appellees.

Arnold D. Laubach, Jr. and Michael Stonefield, Pennington County Public Defender's Office, Rapid City, for defendant and appellant, Korth.

Joyce A. Svoboda, Rapid City, for defendant and appellant, Steele.

AMUNDSON, Justice.

[¶ 1.] Motions to withdraw were filed by court appointed attorneys based on the belief that their clients' appeals were frivolous. This Court ordered the attorneys to brief the issue of whether an adequate *Anders* brief is a necessary condition to allow counsel to withdraw.[1]

## FACTS

[¶ 2.] The State and Steele's appointed counsel both argue that the *Anders* procedure, whereby a motion to withdraw and a brief stating potential appealable issues, is appropriate, and should remain in place. Korth's appointed counsel, however, proposes that this Court no longer consider *Anders*-type withdrawal motions.

## STANDARD OF REVIEW

[¶ 3.] We are presented with a question of law in the case at hand, which we examine de novo. *State v. Sheehy*, 2001 SD 130, ¶ 6, 636 N.W.2d 451, 452 (citations omitted).

## DECISION

[¶ 4.] In this case, the State and Steele's counsel request that this Court retain the *Anders* procedure that is currently in place. Much of the argument supporting current procedure stems from our Rules of Professional Conduct, specifi-

---

1. In *State v. Korth* and *State v. Steele*, the defendants pleaded guilty to various drug charges. Both Lance Korth (Korth) and Sheila Steele (Steele), the defendants, wanted to appeal the sentences imposed on them by the trial court. Appointed counsel for Korth and Steele made motions to withdraw based on frivolousness of issues and submitted briefs raising the potential issue of cruel and unusual punishment.

cally Rule 3.1 in SDCL chapter 15–18, which states:

> A lawyer shall not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so that is *not frivolous* which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer of the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

(emphasis added). The State asserts that following the current procedure is the best way to avoid violations of the ethical rules set out for attorneys. Korth's counsel, however, asserts that the *Anders* procedure should be eliminated.[2]

[¶ 5.] To address this issue, it is important to understand the historical progeny on which our decision will be based. The initial underlying principles for *Anders* procedures began with *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), where the United States Supreme Court declared that under the Fourteenth Amendment, the right to counsel in criminal cases extends in all states. Then, in 1956, the U.S. Supreme Court reviewed the decision of the Illinois Supreme Court, which required an indigent defendant to purchase the trial transcript necessary to obtain appellate review. *Griffin v. Illinois*, 351 U.S. 12, 14, 76 S.Ct. 585, 588, 100 L.Ed. 891 (1956). Because the indigent individual could not afford the transcript, the court, in essence, denied him his right to appeal. *Id.* In *Griffin*, the Supreme Court emphasized equality among all criminal defendants, wealthy or poor, and held that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Id.*, 351 U.S. at 19, 76 S.Ct. at 591, 100 L.Ed. 891.

[¶ 6.] Next, in *Douglas v. People of State of California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), this country's highest court addressed the right to appellate counsel, and stated the following:

> There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.

*Id.* 372 U.S. at 357–58, 83 S.Ct. at 817, 9 L.Ed.2d 811. The Supreme Court held that there is a right to counsel on appeal, not just at the trial level. Again, emphasizing the right to equal protection of the law, the Supreme Court said that without ensuring indigent defendants representa-

---

**2.** The impetus of Korth's argument seems to stem from our opinion in *State v. Ekern*, 2001 SD 20, 623 N.W.2d 448 (*Ekern I* ) and *State v. Ekern*, 2001 SD 21, 623 N.W.2d 449 (*Ekern II* ). Based on this Court's comments regarding the pattern of summarily affirming many appeals from the Pennington County public defender's office, Korth argues it is no longer possible to follow the *Anders* procedure and heed the caution set forth on filing meritorious briefs in *Ekern I*, 2001 SD 20, ¶ 3 n2, 623 NW2d at 448 n2. We, however, point out that it does not appear as though *Anders*-type briefs were at issue in Ekern's cases because counsel did not move to withdraw. Moreover, we point out the scanty work-product that emerged, where counsel failed to adequately cite to portions of the record supporting meritorious claims in its briefs for the *Ekern* cases. Thus, apparent attempts to chastise the Court for its terse treatment of those cases appears unwarranted.

tion on appeal, there is "discrimination ... between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot." *Id.*, 372 U.S. at 357, 83 S.Ct. at 817, 9 L.Ed.2d 811.[3]

[¶ 7.] Then, after indigent defendants had been ensured the right to receive necessary transcripts and adequate counsel to represent them on appeal, the issue of how an attorney must proceed if there is nothing non-frivolous in the record to support an appeal arose. In 1967, the decision that truly prompted the dispute at hand was put into law, *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. This Court has previously discussed *Anders* and the protections that should be provided indigent defendants on appeal. *See Sweeney v. Leapley*, 487 N.W.2d 617, 619 (S.D.1992) (finding the *Anders* procedure should be followed when counsel feels there is no merit to habeas actions). *Anders* states that if counsel appointed to represent an indigent defendant finds a case

> wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request, must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal require-

ments are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on the merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

> This requirement would not force appointed counsel to brief his case against his client but should merely afford the latter the advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the references not only to the record, but also to the legal authorities as furnished it by counsel.... This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practical—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel.

*Id.* at 619 (quoting *Anders*, 386 U.S. at 744–45, 87 S.Ct. at 1400, 18 L.Ed.2d at 498–99). *See also Loop v. Solem*, 398 N.W.2d 140, 143 (S.D.1986) (discussing the *Anders* procedure).

[¶ 8.] After *Anders* was in effect, the U.S. Supreme Court had to assess when court appointed defense has gone far enough to satisfy the *Anders* requirements. In *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), the appellant attorney submitted a "Certificate of Meritless Appeal and Motion" which stated that the attorney carefully reviewed the record, and found no errors. Therefore, the attorney moved to withdraw from the case. *Id.*, 488 U.S. at 77, 109 S.Ct. at 348, 102 L.Ed.2d 300. The court of ap-

---

3. This right to appellate counsel has obviously evolved from the rights granted by our forefathers in the constitution. It may be difficult for a lay person to accept that an indigent defendant in a criminal case should be afforded the same representation as a rich person, but that is what the law of our land provides for.

peals granted the motion to withdraw. It then examined the record and found error did occur, and reversed the conviction and sentence on that count, but affirmed the remaining counts and found that petitioner was not prejudiced. *Id.* The Supreme Court held that "the Ohio Court of Appeals did not follow the *Anders* procedures when it granted appellate counsel's motion to withdraw, and that it committed an even more serious error when it failed to appoint new counsel after finding that the record supported several arguably meritorious grounds for reversal of petitioner's conviction and modification of his sentence." *Id.*, 488 U.S. at 81, 109 S.Ct. at 350, 102 L.Ed.2d 300. The Supreme Court went on to explain that the Court of Appeals should have denied the motion to withdraw and, furthermore, should not have granted the motion before reviewing the record. *Id.*, 488 U.S. at 81–83, 109 S.Ct. at 350–51, 102 L.Ed.2d 300.

[¶ 9.] Shortly after the *Penson* case, the U.S. Supreme Court analyzed whether Wisconsin's procedure for handling *Anders*-type cases was appropriate in light of *Anders*. In *McCoy v. Court of Appeals of Wisconsin*, District 1, the Supreme Court analyzed the Wisconsin Supreme Court's rule requiring that *Anders* briefs "include 'a discussion of why the issue lacks merit.'" *Id.*, 486 U.S. 429, 431, 108 S.Ct. 1895, 1898, 100 L.Ed.2d 440 (1988). The *McCoy* Court noted that the Wisconsin Supreme Court did not expect "protracted argument in favor of the conclusions reached[,]" but rather required citations to principal cases, laws and facts in the record to verify that the appeal is meritless. *Id.*, 486 U.S. at 440, 108 S.Ct. at 1903, 100 L.Ed.2d 440. Thus, the Supreme Court held the procedure was unobjectionable, and further acknowledged that the type of candor requested in Wisconsin is already required under attorneys' ethical rules. *Id.*, 486 U.S. at 441, 108 S.Ct. at 1903, 100 L.Ed.2d 440.

[¶ 10.] More recently, the United States Supreme Court has stated that courts are free to adopt any procedure to protect defendants' rights to appellate counsel; they are not bound by the exact steps outlined in *Anders*. *Smith v. Robbins*, 528 U.S. 259, 265, 120 S.Ct. 746, 753, 145 L.Ed.2d 756 (2000). The United States Supreme Court stated: "The procedure we sketched in *Anders* is a prophylactic one; the states are free to adopt different procedures so long as those procedures adequately safeguard a defendant's right to appellate counsel." *Id.* The *Smith* court then went on to find that the procedure established in *People v. Wende*, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071, 1074–75 (1979) adequately protects a defendant's rights to appellate counsel.[4] The Court then stated that the California system described in *Wende* did not violate the constitution because it provides adequate protections to ensure that an effec-

---

4. The *Wende* procedure is, as follows:

[C]ounsel, upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of a case, with citations of the record. He also attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a *pro se* supplemental brief. He further requests that the court independently examine the record for arguable issues. Unlike under the *Anders* procedure, counsel following *Wende* neither explicitly states that his review has led him to conclude that an appeal would be frivolous (although that is considered implicit [citation omitted]) nor requests leave to withdraw. Instead, he is silent on the merits of the case and expresses his availability to brief any issues on which the court might desire briefing.

*Id.*, 528 U.S. at 265, 120 S.Ct. 746 at 753, 145 L.Ed.2d 756.

tive appeal would occur. *Id.,* 528 U.S. at 276, 120 S.Ct. 746 at 759, 145 L.Ed.2d 756. After reviewing its holdings in cases like *Griffin* and *Douglas, supra,* the Supreme Court stated that the Equal Protection Clause and the Due Process Clause were the underlying basis for ensuring substantial equality to indigent defendants. *Id.,* 528 U.S. at 259, 120 S.Ct. at 759, 145 L.Ed.2d 756. It then explained that *Anders* was meant to ensure indigent defendants would be afforded appeals on the merits, and the *Wende* procedure appropriately did so. *Id.,* 528 U.S. at 278–79, 120 S.Ct. at 760, 145 L.Ed.2d 756.

[¶ 11.] It is clear that the great majority of courts employ a procedure similar to that described in *Anders.* This includes state courts and federal courts. The Eighth Circuit, for example, states:

> To be relieved of an appointment, an attorney must file a motion with the clerk specifying the reasons for the request. Motions for leave to withdraw must be served on the client. . . . Unless the prospective appellant in a criminal case expresses a desire not to appeal in a written notice to the district court, trial counsel must file a timely notice of appeal and prosecute the appeal with diligence until the court grants leave to withdraw. Appointed counsel who believes an appeal is without merit must nonetheless file a brief in conformity with *Anders,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Penson,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). *But see Smith,* 528 U.S. 259, 276, 120 S.Ct. 746, 759, 145 L.Ed.2d 756 (2000) (*Anders* procedure is merely one method of satisfying the requirement of the constitution for indigent criminal appeal).

8th Circuit 2000 Practice Handbook. Other federal courts have given more specific guides to appointed counsel. *See, e.g.,* *Suggs v. United States,* 391 F.2d 971 (App. D.C.1968) (providing an appendix with information for appointed counsel). In addition, some state courts appear to have set out extremely detailed steps for attorneys to follow. *See McCoy,* 486 U.S. 429 at 431 n1, 108 S.Ct. at 1897 n1, 100 L.Ed.2d at 440 (presenting the Wisconsin Rules of procedure in *Anders*-type cases); *State v. Clayton,* 639 P.2d 168 (Utah 1981) (setting forth an 8–step outline of the procedure set forth in *Anders* and explaining how each step should be interpreted).

[¶ 12.] Obviously, there is no precise uniformity among the courts that follow *Anders.* It appears that some courts require so much detail in their *Anders* briefs that attorneys are deterred from filing them. Martha C. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection is More Equal Than Others',* 23 Fla. St.U.L.Rev. 625, 637 (1996) (describing the intricacies of the Arkansas Supreme Court and Court of Appeals rules). On the other hand, courts, like this Court, have briefly acknowledged that the *Anders* procedure should be followed, but have failed to set out a detailed guide. *See, e.g., Loop,* 398 N.W.2d at 143. To further demonstrate the lack of uniformity, it appears some courts use a two-step process, where the court first decides if the appeal is frivolous and rules on the motion to withdraw, then, if the motion is granted, the court reviews the case on its merits. Other courts utilize a one step process where the court looks at the motion to withdraw and reviews the merits in one proceeding. *Commonwealth v. Moffett,* 383 Mass. 201, 418 N.E.2d 585, 591 n2 (1981).

[¶ 13.] Although the vast majority of courts appear to have accepted the guides set forth in *Anders,* some courts have decided not to utilize the *Anders* procedure at all and require the case be submitted on the merits, whether frivolous or not. *State*

*v. McKenney,* 98 Idaho 551, 568 P.2d 1213, 1214 (1977); *State v. Cigic,* 138 N.H. 313, 639 A.2d 251 (N.H.1994).[5] *See also* In re Attorney's Fees of Mohr, 97 Hawai'i 1, 32 P.3d 647 (2001) (requiring court appointed counsel to remain as an advocate and rejecting the use of *Anders* briefs); *Killingsworth v. State,* 490 So.2d 849, 851 (Miss. 1986) (overruled by *Turner v. State,* 818 So.2d 1186 (Miss.2001)) (holding counsel may state to the court that an appeal is without merit, and the client must be informed of that representation and be given the opportunity to respond); *Moffett,* 418 N.E.2d at 591 (holding "appointed counsel should not be permitted to withdraw solely on the ground that appeal is frivolous or otherwise lacking in merit"); *State v. Gates,* 466 S.W.2d 681, 684 (Mo.1971) (stating the *Anders* procedure creates conflicts of interest by requiring defense counsel to argue against his client). Similarly, our neighbor to the north, North Dakota, has held that if court appointed counsel for an indigent defendant believes an appeal is meritless, the court should appoint another attorney to represent the defendant "as soon after the initially appointed attorney makes his opinion as to frivolity known to the court as is practical." *State v. Lewis,* 300 N.W.2d 206, 209 (N.D.1980) (citation omitted). It should also be noted that North Dakota, like South Dakota, grants the right to appeal as a matter of law. *Id.* Consequently, the North Dakota Supreme Court felt that the *Anders* procedure was inadequate to protect that right. *Id.*

■ [¶ 14.] Keeping in mind the above-recited history and the direction that other courts are taking, we are now left with the task of determining which direction this Court should take with regard to *Anders*-type cases. In doing so, we must set out court appointed counsel's duty to act as an advocate for his client in the forefront. "Every advocate has essen-

5. The Idaho Supreme Court has declined to follow *Anders* altogether, and has decided that "once counsel is appointed to represent an indigent client during appeal on a criminal case, no withdrawal will thereafter be permitted on the basis that the appeal is frivolous or lacks merit." *McKenney,* 568 P.2d at 1214. The Idaho court reasoned that just filing a motion to withdraw based on frivolousness of issues will result in prejudice. Additionally, it concluded that, in essence, there is less conflict and less judicial energy focusing on reviewing motions rather than the merits of the case if counsel is not allowed to motion for withdrawal. *Id.*

The "Idaho Rule" was followed by the New Hampshire Supreme Court in *Cigic,* 138 N.H. 313, 639 A.2d 251. The *Cigic* court noted that this procedure may occasionally require that appellate counsel be required to argue frivolous issues to the state supreme court. *Id.* at 254. They, however, created an exception within their rules of professional conduct for such cases. The Idaho procedure adopted, which is similar to the ABA Standards for Criminal Justice, is as follows:

Counsel first must discuss with the defendant whether to appeal. If, in counsel's estimation, the appeal lacks merit or is frivolous, counsel should so inform the defendant and seek to persuade the defendant to abandon the appeal. If the defendant chooses, notwithstanding counsel's advice, to proceed with the appeal, counsel must prepare and file the notice of appeal, including all arguable issues. For cases in which a transcript is required, a transcript shall be prepared and provided to the defendant. After appellate counsel is ordered to file a statement of reasons why the appeal should be accepted, counsel must thoroughly examine the record and again determine whether any nonfrivolous arguments exist. If counsel concludes that the appeal is frivolous, counsel should again advise the defendant to withdraw the appeal. If the defendant decides not to withdraw the appeal, counsel must file a statement of reasons or a brief that argues the defendant's case as well as possible. Counsel cannot concede that the appeal is frivolous. If an appeal is truly frivolous, counsel's accurate summary of the facts and law will make that obvious. Thereafter, the appeal will proceed in the normal course.
*Cigic,* 639 A.2d at 254.

tially the same professional responsibility whether he or she accepted a retainer from a paying client or an appointment from a court. . . . In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability." Warner, *supra*, at 637.

[¶ 15.] In this case, Korth's appointed counsel pointed out some of the recurring criticisms of the *Anders* procedure. For example, as the United States Supreme Court noted in *Smith:*

> One of the most consistent criticisms . . . is that *Anders* is in some tension both with counsel's ethical duty as an officer of the court (which requires him not to present frivolous arguments) and also with his duty to further his client's interest (which might not permit counsel to characterize his client's claims as frivolous).

528 U.S. at 281–82, 120 S.Ct. at 762, 145 L.Ed.2d 756. Other courts, too, have acknowledged that attorneys can be on the ethical horns of a dilemma if the client insists on a meritless position. While adhering to the underlying focus on the clients' best interest and the attorneys' ethical obligations, we consider one judge's following critique of the typical *Anders* procedure:

> In trying to determine whether counsel has been faithful to the task ... we either duplicate undocumented time spent by counsel or do what counsel should have done but did not. On the other hand, if we do receive a comprehensive brief, we wonder and surely the appellant will, too[,] why counsel who found so much to discuss did not do so as an advocate instead of, in effect, as a judge ruling against the client. In short, the *Anders* dictum typically forces either the court to undertake the role of the lawyer, or the lawyer to undertake the role of the court. This role reversal does not well serve the administration of justice.

*Gale v. United States,* 429 A.2d 177, 181 (D.C.App.1981) (Ferrin, A.J., dissenting).

[¶ 16.] The Oregon Supreme Court, after doing a thorough review of *Anders* and its progeny, held that appointed counsel representing an indigent defendant need not motion to withdraw from a case, even if the requested appeal is entirely frivolous. *State v. Balfour,* 311 Or. 434, 814 P.2d 1069, 1078 (1991) (*Balfour II*). Subsequently, Oregon adopted appellate procedural rules providing direction for the representation of indigent defendants.[6]

---

6. Oregon Rule of Appellate Procedure 5.90 provides:

> (1) If counsel appointed by the court to represent an indigent defendant in a criminal case on direct appeal has thoroughly reviewed the record, has discussed the case with trial counsel and the client, and has determined that the case does not raise any arguably meritorious issues counsel shall file a brief with two sections:
> (a) Section A of the brief shall contain:
> (i) A statement of the case, including a statement of the facts of the case. If the brief contains a Section B with one or more claims of error asserted by the client, the statement of facts shall include facts suffi-

cient to put the claim or claims of error in context.
(ii) A description of any demurrer or significant motion filed in the case, including, but not limited to, a motion to dismiss, a motion to suppress and a motion in limine, and the trial court's disposition of the demurrer or motion.
(iii) A statement that the case is being submitted pursuant to this rule, that counsel has thoroughly reviewed the record and discussed the case with trial counsel and the client, and that counsel has not identified any arguably meritorious issue on appeal. If the brief does not contain a Section B, counsel also shall state that counsel contacted the client, gave the client reason-

**[¶ 17.]** For future ·appeals where appointed counsel is presented with an *Anders*-type case, we find that the Oregon procedure of including a "Section A" (issues the attorney believes are meritorious) and "Section B" (issues the attorney believes are frivolous, but briefed at the client's request) successfully strikes a balance between protecting a defendant's Sixth Amendment right to appellate counsel, protecting Fourteenth Amendment due process and equal protection rights and upholding the ethical rules by which attorneys must abide. This procedure reaches the main goal of ensuring the case is decided on the merits. Furthermore, the defendant is afforded:

notice of appeal; a state-paid transcript; appointed counsel charged with conducting a good faith, professional, thorough review of the case as the client's advocate; appointed counsel raising all issues for review according to counsel's exercise of professional and ethical judgment in the client's best interest; an opportunity for the client to raise any issue, with legal advice from counsel, notwithstanding the professional and ethical judgment made· by the counsel that defendant's arguments are frivolous; and a Court of Appeals decision made on the same basis as in any appeal.

*Balfour II*, 311 Or. 434, 814 P.2d at 1081. Therefore, we find the appropriate and effective way to process this issue involving an· absolute right to appeal and the right to appointed counsel for the indigent is for the filing of the "Section A" and "Section B" appellate brief. The former should be designated by the attorney as attorney issues, and the latter should be designated as issues that the client requested be submitted.

**[¶ 18.]** This process avoids the unnecessary step of deciding appointed defense counsel's motions to withdraw, and offers a procedure where defendants are provided an effective means for presenting their arguments. Furthermore, we are providing a means by which appointed defense counsel can assist their clients with their

able opportunity to identify a claim or claims of error, and that the client did not identify any claim of error for inclusion in the brief.

(iv) Counsel's signature.

(b) Section B of the brief shall contain any claim of error requested by the client and shall be signed by the client. Section B ·shall attempt to state the claim and any argument in support of the claim as nearly as practicable in the manner that the client seeks, in proper appellate brief form.

(2) A case in which appellant's brief is prepared and filed under this rule shall be submitted without oral argument, unless otherwise ordered by the court.

(3) On reviewing the record and the briefs filed by the parties, if the court identifies one or more arguably meritorious issues in the case, the court shall notify appellant's counsel of the issue or issues so identified. Appellant's counsel shall have 28 days from the date of the court's notice to file a supplemental opening brief addressing those issues. In addition to addressing the issue or issues identified by the court, counsel may address any other arguably meritorious issue counsel has identified. Respondent shall have 28 days after appellant files a supplemental opening brief to file a response or supplemental response brief addressing the issues raised in the supplemental opening brief.

(4) In a case other than a criminal case on direct appeal, court-appointed counsel who determines that there are no meritorious issues on appeal may submit a brief under this rule, in which case the matter will be ,submitted without oral argument, unless otherwise ordered by the court.

(5) In any case in which the appellant is represented by court-appointed counsel on appeal and counsel filed a brief in the Court of Appeals under subsection (1) of this rule, counsel may submit a petition for review that contains a Section A that complies with Rule 9.05(1), (2), and (3)(g), and a Section B that complies with paragraph (1)(b) of this rule.

**537**

arguments without violating ethical rule 3.1, which prohibits the presentation of wholly frivolous arguments. By following the above procedure, the potential for role reversal between appointed counsel and judges is avoided, and we ensure that appeals will be considered on the merits.

[¶ 19.] Based on the above decision, the motions to withdraw made by Korth's and Steele's defense counsel are denied, and counsel shall now proceed with the appeals in accordance with this decision. The briefs are to be filed within 45 days after this decision has been issued.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 21.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 22.] I think we are unnecessarily complicating this matter and these cases.

[¶ 23.] If an appeal has merit, file a merit brief.

[¶ 24.] If an appeal has no merit, file an *adequate Anders* brief and keep your client informed of same.

[¶ 25.] It is not necessary to file a motion to withdraw in either case.

[¶ 26.] In both of these cases, we should simply require counsel to file *adequate Anders* briefs so that we can decide both cases on the merits.