2003 SD 57

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Shaun ARABIE, Defendant and Appellant.**

**No. 22286.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Decided May 21, 2003.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Michael Stonefield, Office of the Public Defender for Pennington County, Rapid City, South Dakota, Attorneys for defendant and appellant.

PER CURIAM.

[¶ 1.] Shaun Arabie appeals his conviction and sentence for one count of first degree burglary and one count of second degree rape. We affirm.

## FACTS

[¶ 2.] The victim was a thirty-one-year-old single mother who lived with her six-year-old son in a trailer home in Rapid City. Early on the morning of June 26, 2001, the victim was awakened in her bed when she felt some pressure on her chest. Opening her eyes, the victim found a male assailant, later identified as Arabie, lying on top of her holding a knife to her chest. Arabie told the victim not to scream because he had a knife and then pressed the serrated edge of the steak knife he was holding to her throat. The victim screamed and tried to squirm away, but Arabie instructed her to do as he said and he would not hurt her. Arabie forced the victim to remain on her back, pulled off her underwear and tore off the top of her nightgown. He then bit her on one of her breasts hard enough to draw blood and leave teeth marks. The victim continued to struggle, but Arabie became angry, pushed her down onto her back and choked her until her vision became blurry.

[¶ 3.] The struggling and Arabie's threats went on for some time. Arabie eventually unfastened his jeans and pulled them down along with his underwear. He then forced the victim to perform oral sex on him until she told him that she was afraid she would vomit. Arabie instructed the victim to turn around and the victim, fearing what was to follow, begged Arabie to use some condoms that she had in her room. This angered Arabie who forced his penis into the victim's vagina from his position behind her and raped her.

[¶ 4.] When the victim felt Arabie pull away, she turned around and saw him fastening his pants with his back toward her. The victim rose from the bed, pushed Arabie forward and struggled with him, pulling him into a headlock and then onto the floor. The two continued to fight and struggle for a time until Arabie slammed the victim's head against a nightstand, stunning her. Arabie fled the room and the victim quickly shut her bedroom door, locked it and phoned for emergency assistance. Law enforcement officers later arrived on the scene and began their investigation.

[¶ 5.] The investigation of the above events led to identification of Arabie as the assailant. On July 19, 2001, Arabie was indicted for one count each of first degree burglary, second degree rape and aggravated assault. A part two information was also filed alleging Arabie to be a habitual offender based upon a 1997 burglary conviction in the State of Nebraska.

[¶ 6.] During the course of the ensuing proceedings, defense counsel filed a number of motions including a detailed discovery motion. Plea bargaining also took place. On December 5, 2001, Arabie pled guilty to first degree burglary and second degree rape in exchange for a dismissal of the aggravated assault charge and the part two habitual offender information. Sentencing was on January 16, 2002. The trial court sentenced Arabie to twenty-five years in the penitentiary, with five suspended, on the burglary conviction and to a consecutive twenty-five years in the penitentiary on the rape conviction.

[¶ 7.] Arabie appealed his conviction to this Court and filed his brief as a "*Korth* brief" pursuant to this Court's decision in *State v. Korth*, 2002 SD 101, 650 N.W.2d 528. In *Korth*, this Court held that in cases where court appointed counsel representing an indigent defendant on appeal determines that the case does not raise

any arguably meritorious issues, counsel need not move to withdraw even if the appeal is entirely frivolous. *See Korth,* 2002 SD 101 at ¶ 16, 650 N.W.2d at 535. Rather, this Court adopted an alternative briefing procedure for such cases devised by the Oregon Supreme Court in *State v. Balfour,* 311 Or. 434, 814 P.2d 1069 (1991). Several preliminary issues are presented by use of the *Korth* procedure in this case.

## *KORTH* ISSUES

### ISSUE ONE

[¶ 8.] **May counsel raise and argue legal issues in Section A of a brief submitted under *Korth?***

[¶ 9.] Generally, the procedure this Court adopted in *Korth* requires briefs in cases where court appointed counsel has identified no meritorious issues for appeal to be in two parts: Section A completed by counsel to include, among other things, a statement "that counsel has not identified any arguably meritorious issue on appeal"; and, Section B to contain any claims of error requested by the client. *See Korth,* 2002 SD 101, n. 6, 650 N.W.2d at 535–36 (quoting Oregon Rule of Appellate Procedure 5.90). In summarizing the required contents of Section A and Section B of a brief in *Korth,* this Court referred to "the Oregon procedure of including a 'Section A' (*issues the attorney believes are meritorious* ) and 'Section B' (issues the attorney believes are frivolous, but briefed at the client's request)[.]" *Korth,* 2002 SD 101, ¶ 17, 650 N.W.2d at 536 (emphasis added). At a later point this Court further instructed:

> we find the appropriate and effective way to process this issue involving an absolute right to appeal and the right to appointed counsel for the indigent is for the filing of the "Section A" and "Section B" appellate brief. The former should be designated by the attorney as *attor-ney issues,* and the latter should be designated as issues that the client requested be submitted.

*Id.* (emphasis added).

[¶ 10.] As asserted by Arabie's counsel, the language emphasized in the above quotations from *Korth* is inconsistent with the rules that this Court adopted from *Balfour. Balfour* makes clear that counsel should not argue *any* issues in Section A of the brief. Rather, counsel simply provides a statement that he or she "has thoroughly reviewed the record and discussed the case with trial counsel and the client, and that counsel has not identified any arguably meritorious issue on appeal." *Korth,* 2002 SD 101 at n. 6, 650 N.W.2d at 535 (quoting Oregon Rule of Appellate Procedure 5.90(1)(a)(iii)). Thus, notwithstanding what this Court said in *Korth,* there should be no "issues the attorney believes are meritorious" or "attorney issues" in a proper *Korth* brief. This is only logical because, if there are issues in the case that counsel believes are meritorious, counsel should obviously abandon the *Korth* procedure and brief and argue those issues as in any other criminal appeal.

[¶ 11.] Based upon the foregoing, the only issues that should be presented and argued in a *Korth* brief are those issues presented at the client's request in Section B of the brief. This conclusion is reinforced by the following instructions set forth by the Oregon Supreme Court in *Balfour:*

> (4) The appellant's brief shall be divided into two sections, Section A and Section B. Section A of the appellant's brief shall contain a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal. *Section A, under*

*those circumstances, shall contain no assignments of error or argument.*

\* \* \*

(6) If the client seeks to raise one or more issues with the court that counsel considers to be frivolous, the brief shall contain a presentation of the issue or issues in a Section B. Section B of the appellant's brief, under those circumstances, shall raise any claim of error requested by the client.

(7) Counsel shall provide the client with appropriate legal advice on these claims of error, but shall present to the court in the brief the issue that the client seeks to raise in the manner that the client seeks to raise it. In so doing, counsel's role is limited to attempt to see to it that the client states the issues and arguments in proper appellate brief form and the brief is timely filed.

*Balfour*, 814 P.2d at 1080 (citations omitted)(emphasis added).

## ISSUE TWO

[¶ 12.] **Does Section A of Arabie's brief meet the requirements of *Korth?***

■ [¶ 13.] *Korth* requires Section A of a brief to include: a statement of the case and facts encompassing those facts sufficient to present any claim or claims of error asserted by the client in Section B of the brief; a description of any significant motions filed in the case and the trial court's disposition of the motions; a statement that the case is being submitted pursuant to *Korth*, that counsel has thoroughly reviewed the record and discussed the case with trial counsel and the client, and that counsel has not identified any arguably meritorious issue on appeal; and, counsel's signature. *Korth*, 2002 SD 101 at n. 6, 650 N.W.2d at 535–536.

[¶ 14.] Counsel has complied with all of these requirements here. Counsel has provided a statement of the case and facts sufficient to address the issues raised in Section B of the brief. Although counsel did not discuss in detail the motions filed in the case and the trial court's disposition of the motions, counsel did mention the motions and that they were not contested by the State. Counsel's brief explicitly indicates: that it is submitted pursuant to *Korth, supra;* that counsel has thoroughly reviewed the record; that counsel *was* Arabie's trial counsel; that he has discussed the case and possible appellate issues with Arabie; and that he has not identified any arguably meritorious issues on appeal. Finally, counsel signed Section A of the brief. Thus, Section A meets all of the requirements for Section A of a *Korth* brief that are pertinent to this case.

## ISSUE THREE

[¶ 15.] **Does Section B of Arabie's brief meet the requirements of *Korth?***

■ [¶ 16.] The rule governing the contents of Section B of a *Korth* brief provides:

Section B of [a] brief [filed under *Korth* ] shall contain any claim of error requested by the client and shall be signed by the client. Section B shall attempt to state the claim and any argument in support of the claim as nearly as practicable *in the manner that the client seeks*, in proper appellate brief form.

*See Korth*, 2002 SD 101 at n. 6, 650 N.W.2d at 536 (emphasis added)(quoting Oregon Rule of Appellate Procedure (1)(b)).

■ [¶ 17.] Section B of Arabie's brief contains three claims of error requested by Arabie and is signed by Arabie. The signature is not a mere formality. The above quotation from *Korth* makes clear that it is the client, not counsel, who controls the presentation of the issues in

Section B of a brief. Counsel's role is plainly limited to providing assistance in presenting the issues "as nearly as practicable ... in proper appellate brief form." *Id.* The client's signature verifies that counsel has, in fact, shared the brief with the client, that the client has reviewed it and that it adequately presents the client's claims of error and arguments in support of the claims "in the manner that the client seeks[.]" *Id.* Thus, later contentions that counsel failed to adequately present the client's claims in the manner desired by the client are avoided. For these reasons, the client's signature is normally an essential part of Section B of a brief filed under *Korth.*[1]

[¶ 18.] The State questions the sufficiency of Section B of Arabie's brief, emphasizing that *Korth* requires that it state the client's claims in "proper appellate brief form." *See Korth*, 2002 SD 101 at n. 6, 650 N.W.2d at 536. Citing the general rules of appellate procedure, the State points out that Section B does not contain any detailed arguments in that section or citations to controlling authorities. The State would apparently require counsel to act as in any other case and conduct extensive research, identify authorities and draft a detailed brief supporting the client's arguments no matter how absurd or frivolous they might be. This is not required. As the Oregon courts have subsequently recognized, the *Balfour* procedure "does not authorize counsel to expend unnecessary amounts of time developing frivolous arguments." *Lee v. Maass*, 118 Or.App. 401, 847 P.2d 890, 892 (1993) Here, counsel assisted Arabie to the extent

"practicable" in presenting his arguments. That is all that *Korth* requires.

### SECTION B ISSUES

[¶ 19.] Arabie raises three issues in Section B of his brief: two allegations of ineffective assistance of trial counsel and a third argument that the trial court improperly considered other similar charges pending against him in imposing his sentence. This Court must consider these issues "in the same manner as it considers and decides issues that are raised in any other direct criminal appeal." *Balfour*, 814 P.2d at 1080. However, if, on reviewing the record and briefs, this Court identifies one or more "arguably meritorious" issues, it must notify appellant's counsel of those issues and afford counsel time to file a supplemental brief addressing them. *See Korth*, 2002 SD 101 at n. 6, 650 N.W.2d at 536. Time is also to be afforded to the State to file a supplemental response brief. *See id.*

[¶ 20.] Arabie's claims of ineffective assistance of counsel are clearly of no merit in this direct appeal. As this Court has often observed:

> Absent exceptional circumstances, we will not address an ineffective assistance claim on direct appeal. We depart from this principle only when trial counsel was "so ineffective and counsel's representation 'so casual' as to represent a 'manifest usurpation' of [the defendant's] constitutional rights." The preferred arena for an ineffective assistance claim is a habeas corpus proceeding. While there are many reasons for this rule, [appellant's] claims illustrate its main

1. If the brief does not contain a Section B, counsel may avoid the requirement of a signature by the client by substituting counsel's statement that, "counsel contacted the client, gave the client reasonable opportunity to identify a claim or claims of error, and that

the client did not identify any claim of error for inclusion in the brief." *Korth*, 2002 SD 101 at n. 6, 650 N.W.2d at 535–36 (quoting Oregon Rule of Appellate Procedure 5.90(1)(a)(iii)).

purpose: in habeas proceedings, attorneys charged with ineffectiveness can explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review. *State v. Dillon,* 2001 SD 97, ¶ 28, 632 N.W.2d 37, 48 (citations omitted).

[¶ 21.] As for Arabie's claim of consideration of improper information at sentencing, it is settled that the range of evidence that may be considered at sentencing is extremely broad. As this Court set forth in *State v. Conger,* 268 N.W.2d 800, 801 802 (S.D.1978):

> In determining the type and extent of punishment to be imposed, the sentencing judge may exercise wide discretion with respect to the type of information used as well as its source. He should have full access to the fullest information possible concerning the defendant's life and characteristics. Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record....
>
> It is obvious from these and other decisions that the sentencing judge is vested with the authority and burdened with the responsibility to inquire into the various aspects of each defendant's case before sentence is pronounced. (citations omitted).

Courts have recognized that the broad range of evidence that may be considered at sentencing even includes inquiry into "uncharged conduct or even conduct that was acquitted." *See U.S. v. Schaefer,* 291 F.3d 932, 944 (7thCir.2002). Thus, Arabie's claim that the trial court erred in imposing his sentence when it made a brief reference to other similar charges then pending against him also lacks merit.

[¶ 22.] Affirmed.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.