2004 SD 39

**The PEOPLE of the State of South Dakota, ex rel. SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES, in the Interests of A.D., Minor Child, and Concerning D.S.Y., Respondent.**

No. 22947.

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 2004.

Decided March 31, 2004.

---

1. The court repeats this unfounded assumption speculating that Stein "apparently is not supporting the child...." *Supra* ¶ 7.

Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General, Pierre, South Dakota, for appellee State of South Dakota.

Rick A. Ribstein of McCann, Ribstein, Hogan & McCarty, Brookings, South Dakota, for appellant D.S.Y.

PER CURIAM.

[¶ 1.] D.Y. (father) appeals the termination of his parental rights over his ten-year-old daughter. The only question of merit in this appeal is whether the filing of a *Korth* brief is appropriate in an abuse and neglect appeal. We conclude that it is and affirm.

## FACTS

[¶ 2.] Father is thirty-eight years of age and currently resides in Sioux Falls. He was never married to child's mother although they did live together for a time and had a volatile relationship. Child was born in 1993 and lived with mother and two older step-siblings in Flandreau. Mother was a chronic alcoholic unable to maintain steady employment or a suitable residence. She fell in and out of unstable personal relationships with men involving alcohol and substance abuse and these relationships led to numerous incidents of

domestic violence. Mother's problems resulted in ongoing child neglect and the children's exposure to domestic violence and possible sexual abuse.

[¶ 3.] Abuse and neglect proceedings were commenced with the filing of a petition in January 2000. The children were adjudicated abused or neglected as to mother in March. Father was incarcerated in the state penitentiary at that time for DUI. Because of father's incarceration, DSS's [1] early efforts at maintenance of a family unit were directed at mother. Mother, however, proved unable to maintain her sobriety or to provide the necessities for her children's livelihood. In October, the children were removed from her custody and placed with DSS when mother was homeless and had no place to care for them. Although father had recently been paroled and was living in a half-way house, he was not considered a suitable placement option for child. While he did express an interest in obtaining custody of child, he failed to follow through with requirements to exercise visitation. Moreover, in addition to his legal problems, father had his own history of neglect of child and a record of drug and alcohol abuse and domestic violence issues. Father was also violating his parole in numerous respects. He was using marijuana with other parolees, was not maintaining steady employment, was behind on his rent, was in denial as to his substance abuse problems and was refusing participation in drug and alcohol aftercare. Father was described as "one step away" from going back to the penitentiary and, in January 2001, his parole was revoked for his marijuana use. As a result, father returned to the penitentiary to finish serving his sentence.

[¶ 4.] DSS efforts to work with mother continued well into 2001, but her problems persisted and her parental rights over all of her children were ultimately terminated in September. By that time, child had also been adjudicated abused or neglected as to father, but the trial court ordered that DSS investigate the possibility of placing child in father's custody. Father was not released from the penitentiary until June 2002. In August, the trial court conducted a hearing and entered an order directing DSS to work toward a permanent living arrangement for child other than with father and to establish visitation guidelines for father. The order did not terminate father's parental rights, but did reserve the right to do so in the future upon entry of sufficient findings.

[¶ 5.] After entry of the trial court's order, DSS set forth written guidelines for father to follow to obtain visitation with child. Notwithstanding guideline requirements, father failed to pursue aftercare, failed to attend AA or NA meetings, denied that he needed aftercare, ignored his counselor's recommendations and broke off contact with his counselor. Father exercised only sporadic visitation with child that tapered off in early 2003. By that time, DSS had suspended father's visitation rights pending his compliance with the visitation guidelines. Father made no effort to comply with the guidelines and, consequently, by the time of the dispositional hearing, had not exercised visitation for some time. Moreover, father was unemployed for extended periods, had no suitable housing for a child and fell behind in the rent on his apartment. Father also resisted DSS efforts to consult with him on child's special needs. A telephone conference between father and child's counselor and therapist had to be terminated because of father's insistence that child had no special needs. By March 2003, father had ceased contact with DSS, had failed to

---

1. The department of social services.

undergo required counseling and aftercare and had failed to follow through with family counseling recommendations.

[¶ 6.] The dispositional hearing as to father was held in May 2003. In July, the trial court entered findings of fact, conclusions of law and an order terminating father's parental rights. Father appeals.

## ISSUE ONE

[¶ 7.] Whether court-appointed counsel in an appeal of a termination of parental rights case is permitted to file a *"Korth* brief" conceding a lack of arguably meritorious issues for appeal and submitting only those issues requested by the client?

[¶ 8.] In *State v. Korth,* 2002 SD 101, 650 N.W.2d 528, this Court adopted an alternative briefing procedure for criminal appeals where court appointed counsel identifies no "arguably meritorious" issues for appeal. The procedure requires bifurcated briefing in which counsel indicates in Section A of the brief that he has not identified any arguably meritorious issues for appeal and submits, in Section B of the brief, any claim of error requested by the client. Father's court appointed counsel has submitted his brief as a *"Korth* brief." The State argues that the *Korth* procedure is reserved for criminal appeals and is inapplicable in appeals from civil proceedings to terminate parental rights. Accordingly, the State contends that father's brief should be stricken and that the decision of the trial court should be affirmed.

[¶ 9.] The *Korth* procedure was adopted by this Court to safeguard a criminal defendant's right to appellate counsel

as required by the United States Supreme Court's decision in *Anders v. State of California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). *See also Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)(states are not bound by the steps outlined in *Anders* and may adopt different procedures so long as they adequately safeguard a defendant's right to appellate counsel). Thus, *Korth* is applicable in any case in which *Anders* requirements are applicable. Although jurisdictions are split on the issue of *Anders'* applicability to appeals in termination of parental rights cases, the majority appear to support such application. *See J.K. v. Lee County,* 668 So.2d 813 (Ala.Civ.App. 1995); *Jones v. Department of Human Resources,* 155 Ga.App. 371, 271 S.E.2d 27 (1980); *Matter of Keller,* 138 Ill.App.3d 746, 93 Ill.Dec. 190, 486 N.E.2d 291 (1985); *Morris v. Lucas County Children Serv. Bd.,* 49 Ohio App.3d 86, 550 N.E.2d 980 (1989); *In Re V.E.,* 417 Pa.Super. 68, 611 A.2d 1267 (1992); *In Re K.S.M.,* 61 S.W.3d 632 (Tex.App.2001); *L.C. v. State,* 963 P.2d 761 (Utah Ct.App.1998). *Contra Denise H. v. Arizona Dept. of Economic Sec.,* 193 Ariz. 257, 972 P.2d 241 (App.1998); *In Re Sade C.,* 13 Cal.4th 952, 55 Cal.Rptr.2d 771, 920 P.2d 716 (1996); *N.S.H. v. Florida D.C.F.S.,* 843 So.2d 898 (Fla.2003); *In Re Harrison,* 136 N.C.App. 831, 526 S.E.2d 502 (N.C.Ct.App.2000). *See also In Re Welfare of Hall,* 99 Wash.2d 842, 664 P.2d 1245 (1983)(absent client consent, withdrawal of counsel on appeal in a child deprivation proceeding will never be permitted).[2]

---

2. There appears to be no dispute that *Anders* is applicable to appeals in juvenile delinquency cases. As explained in *Denise H.,* 972 P.2d at 243:

> Although a juvenile delinquency proceeding is designated a civil proceeding, it nevertheless accuses a juvenile of committing a crime and may result in the juvenile's being deprived of his or her liberty. For that reason, pursuant to the Equal Protection Clause, indigent juveniles adjudicated delinquent have the right to file an *Anders* brief. *See also Gilliam v. State,* 305 Ark. 438, 808 S.W.2d 738 (1991); *Com. v. Heron,* 449

[¶ 10.] A succinct analysis of the divergent views on the applicability of *Anders* to termination of parental rights cases appears in *K.S.M.*, 61 S.W.3d at 633–34:

The case before us differs from an *Anders* case because appeals from orders terminating parental rights are civil rather than criminal. The minority jurisdictions, which we cited above, argue that the right of concern in *Anders* is the federal constitutional right to counsel in criminal cases. In contrast, the right involved in a parental termination case is based solely in state law. We find this argument unpersuasive. Like indigent criminal appellants, indigent appellants challenging an order terminating their parental rights enjoy a right to counsel on appeal. [citing Texas statutes and case law].

In addition, the difference in the nature of the case, i.e., civil rather than criminal, makes no difference in the duties court-appointed counsel owes his or her client. From counsel's perspective, counsel's duty to competently and diligently represent the client is exactly the same in a civil appeal from an order terminating parental rights as in an appeal from a criminal conviction. Moreover, in both criminal and parental termination cases, counsel may conclude, after thoroughly and conscientiously examining the case, that a case lacks any non-frivolous issues for appeal. Despite the civil or criminal nature of the appeal, counsel in such a situation faces the same dilemma of having to diligently represent the indigent client who wants to appeal while still complying with counsel's other ethical duties as a member of the Bar. For these reasons, we hold that when appointed counsel represents an indigent client in a parental termination appeal and concludes that

there are no non-frivolous issues for appeal, counsel may file an *Anders*-type brief. (citations omitted).

[¶ 11.] We find these views to be in accord with the objectives served by requiring the appointment of counsel for the parents in termination of parental rights cases. *See* SDCL 26–7A–31 (appointment of attorney for indigent parents in juvenile cases). Adhering to *Anders* in these cases merely provides additional protection for the indigent appellant's right to the assistance of counsel. As noted by the Alabama Court of Civil Appeals in coming to a similar conclusion in *J.K.*, 668 So.2d at 816, "if the procedure outlined in *Anders* passes muster in criminal cases, it certainly should be adequate in [the termination of parental rights] context."

[¶ 12.] Based upon the foregoing, it would appear to be the majority view that *Anders* should be held applicable to appeals in termination of parental rights cases. Because *Korth, supra* defines the *Anders* process in South Dakota, counsel's submission of a *Korth* brief in this termination of parental rights case was procedurally appropriate and the State's arguments to the contrary are rejected.

### SECTION B  ISSUES

[¶ 13.] Counsel raises four issues requested by father in Section B of his brief: that the trial court inappropriately used past domestic abuse charges and prison sentences against father in arriving at its disposition; that father disagreed with DSS guidelines requiring him to attend aftercare, NA, AA and counseling in order to see his daughter; that the trial court stated it did not like father; and, that father's counselor stated he must attend church in order to continue counsel-

ing and thereby violated his right to freedom of religion.

[¶ 14.] Father's issues lack merit. SDCL 26–7A–34 requires a dispositional hearing to be conducted "to inform the court fully of the exact status of the child and to ascertain the history, environment and past and present physical, mental and moral condition of the child *and of the child's parents,* guardian or custodian." (emphasis added). Father's past domestic abuse charges and prison sentence were certainly relevant in this inquiry.

[¶ 15.] With regard to the conditions imposed on father's visitations with child, SDCL 26–7A–19(2) permits the Court to grant visitation to a parent in a manner in keeping with the best interests of the child and SDCL 26–8A–21 requires DSS to make reasonable efforts to return a child to a parent's home. In view of father's history of substance abuse and domestic violence, the conditions that he attend aftercare, NA, AA and counseling in order to see child were clearly consistent with child's best interests and constituted reasonable preliminary steps toward reunification of child with father.

[¶ 16.] Father's allegation that the trial court stated it did not like him is not supported by the record. Even if it was:

[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.... [Further], [n]ot establishing bias or partiality ... are, expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display.

*Cain v. Department of Corrections,* 451 Mich. 470, 548 N.W.2d 210, 222, n. 30 (1996)(quoting *Liteky v. United States,* 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).

[¶ 17.] Father's contentions over church attendance also are not supported by the record. The record reflects that church attendance was merely a suggestion by father's counselor as an exercise toward "building a supportive community for himself" and child. Father initially agreed to attend church and repeatedly pledged to follow through with the suggestion but then stopped scheduling counseling appointments. There is no indication whatsoever in the record that church attendance was ever imposed as a condition of counseling or that counseling was ever withheld because father had some objection to attending church.

[¶ 18.] Based upon the foregoing, the termination of father's parental rights is affirmed.

[¶ 19.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.