*2004 SD 95*

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jason CASTLEBERRY, Defendant and Appellant.**

No. 22713.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Reassigned April 23, 2004.

Decided Aug. 18, 2004.

Lawrence E. Long, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Betsey Harris, Pennington County Public Defender's Office, Rapid City, South Dakota, Attorneys for defendant and appellant.

KONENKAMP, Justice (on reassignment).

[¶ 1.] Defendant Jason Castleberry was convicted of felony possession of marijuana. He contends that the evidence against him was illegally seized in the search of his vehicle. Because he gave a valid consent to search, we affirm the trial court's denial of his motion to suppress.

## Background

[¶ 2.] At 2:16 A.M., on July 2, 2002, Rapid City Police Officer Christopher Hansen stopped defendant for speeding on Interstate 90. He had been traveling 75 miles per hour in a zone where the posted speed limit was 65 miles per hour. When the officer walked up to the car, defendant was holding his driver's license and vehicle rental agreement out the window. Hansen had defendant accompany him to the patrol car. While checking defendant's driving history with the dispatcher and typing defendant's information into the computer, Hansen continued conversing with defendant. He asked, "If a drug dog were to walk around the outside of your vehicle, would there be any reason that it would alert to the scent of drugs coming from within your car?" Defendant paused for awhile, looked away, and said, "um, no." What happened next is disputed.

[¶ 3.] Hansen testified that he asked for and received defendant's consent to search the car. Defendant denied giving his consent. In any event, after receiving the claimed consent, Hansen placed defendant in the back seat of the patrol car and searched the passenger compartment, finding drug paraphernalia and marijuana. Defendant was handcuffed and placed under arrest. Another officer arrived and Hansen had him search defendant's trunk. Several large duffel bags containing marijuana were found. In total, the officers discovered 66.3 pounds of marijuana.

[¶ 4.] Defendant moved to suppress the evidence seized from his car on the grounds that the officer had extended the traffic stop without reasonable suspicion and that while defendant was illegally detained he refused to consent to a search.

After a hearing, the circuit court ruled that the facts did not support reasonable suspicion, but that while defendant was legally detained he freely and voluntarily consented to a search of his vehicle. In his written findings, however, the judge decided (inconsistent with his earlier ruling) that both probable cause existed for the search and that defendant had consented to the search. In a court trial, the judge found defendant guilty of possession of marijuana. On appeal, defendant challenges the circuit court's findings on probable cause and consent. Because we conclude that defendant consented to the search during a lawful traffic stop, we need not address his other assertion of error.

## Analysis and Decision

[¶ 5.] Defendant first contends that Officer Hansen had no legal reason to expand the stop in order to seek defendant's consent, and therefore, "consent, if obtained at all, was necessarily involuntary." However, during the hearing, on this specific point, the circuit court asked Hansen: "Do you recall? When you asked him that question, do you know if you were in the process of writing the ticket or whether you've completed writing the ticket?" In response the officer stated:

> While I'm speaking with him, I'm typing information into the computer for a license check and that information comes back as information I need to write down on the ticket. And it was somewhere in there I asked those questions.

The court later inquired further:

> The Court: Prior to the permission being granted, would there have been a gap of time between the ticket and the granting of permission? Could you recall any activity that occurred or anything that would have happened between those two time frames?

> The Witness: Now, the only thing that I can remember is that while I'm filling out the ticket, I'm talking with him and I'm waiting for information back on the terminal because I have to use some of that information to fill in on the ticket. So as I'm waiting for that information, I'm asking these questions and I do remember that once he gave me permission to search, I got outside of my car, called for another officer to help me and I can't remember if my ticket was completed or not.

With these responses, we cannot say that the court erred in concluding that "[d]uring the course of issuing a warning citation and checking the defendant's license status, the officer asked for defendant's consent to search the vehicle."

[¶ 6.] In asserting error in the court's finding of consent, defendant points to inconsistencies in Officer Hansen's reports and testimony as well as other factors. Hansen's report, affidavit, and trial testimony reflect different versions of defendant's alleged consent to search. In the application for the search warrant, Hansen wrote that defendant responded to his request to search the vehicle with "Um, yeah, why, did you smell something?" In the police report, Hansen stated that defendant responded, "Um, well, sure, why did you smell something?" At the preliminary hearing, Hansen testified that defendant's response "was somewhat hesitant and then saying yes that I could search his vehicle and then he asked if I had smelled something." But under cross-examination, Hansen admitted that defendant did not say, "yes, you can search my vehicle"; rather, he believed his affidavit more accurately reflected defendant's words. At the suppression hearing, Hansen agreed that he characterized defendant's response as hesitant. Defendant testified that he did not give consent and only answered the

officer's inquiry by the question, "Why, did you smell something?" [1]

[¶ 7.] Defendant also points to other discrepancies in Officer Hansen's testimony. Hansen was asked if he commented to defendant that the department received funding for using drug detection dogs. He denied this. Defendant testified that when he asked Hansen why he wanted to search the vehicle, Hansen's response was that department funding was tied to the number of drug searches officers do. Hansen was again questioned about this comment and admitted that he mentioned "our department likes to see our efforts of drug interdiction and there are opportunities for departments to receive funding for new equipment, any type of equipment, due to those efforts."

[¶ 8.] Under the Fourth Amendment to the United States Constitution and Article VI of the South Dakota Constitution, unreasonable searches are prohibited. Searches conducted without a warrant are unreasonable unless an exception applies, such as consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). Here, the officer testified that defendant consented to a search of his rental car. Defendant testified that he never consented. After hearing the testimony of both defendant and the arresting officer, the circuit court believed the officer. Based on the record before us, we cannot say that the court's findings were clearly erroneous.

[¶ 9.] To determine whether a consent to search was freely and voluntarily given, the totality of the circumstances surrounding the consent must be exam-

ined. *Id.* at 227, 93 S.Ct. at 2047–48. In viewing the totality of the circumstances, we consider the characteristics of the accused: age, maturity, education, intelligence, and experience. We also consider the conditions wherein the consent was obtained, including the officer's conduct and the duration, location, and time of the event. *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976). Whether the accused knew that he possessed a right to refuse consent also is relevant to determining the voluntariness of the consent, although the State need not prove that defendant knew of the right to refuse consent to show that the consent was voluntary. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059; *see also United States v. Drayton*, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).

[¶ 10.] The wording in a law enforcement officer's question for consent is also relevant. For example, in a case where an officer asked a person whether he had anything illegal in the vehicle and then asked "Do you mind if I take a look?" the response was "Sure." The court found that "Sure" "convey[ed] the lack of consent, as in 'Sure, *I mind.*'" *United States v. Barrington*, 210 FSupp2d 773, 778 (2002).[2] However, "[c]onsent can be inferred from words, gestures, and other conduct." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir.2001). In *Jones,* the court wrote, "[t]he precise question is not whether [defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." *Id.* at 695. Further, "[t]he State's burden is not met 'by showing a mere submission to a claim of lawful au-

---

1. No recording of the arrest or conversation was made.

2. In *United States v. Price,* the court was faced with the same question and response as in

*Barrington,* but the *Price* court found that "Sure" was ambiguous and could be "interpreted as either 'Go ahead' or 'No way.'" 54 F.3d 342, 346 (7th Cir.1995).

thority.'" *State v. Zachodni,* 466 N.W.2d 624 (S.D.1991) (quoting *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983)).

[¶ 11.] Whether the Fourth Amendment was violated is a de novo question on appeal. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *State v. Hirning,* 1999 SD 53, ¶ 9, 592 N.W.2d 600, 603. On the other hand, the voluntariness of consent search is a factual question, and as a reviewing court, we must affirm the circuit court's factual findings unless we conclude that they were clearly erroneous. *State v. Guthrie,* 2001 SD 61, ¶ 56, 627 N.W.2d 401, 423 (citation omitted); *cf. United States v. Alverez,* 235 F.3d 1086, 1088 (8th Cir.2000) ("We review for clear error the district court's findings of fact and de novo its determination that the Fourth Amendment was not violated.")

[¶ 12.] Here, there were some inconsistencies in the arresting officer's testimony. Nonetheless, the circuit court weighed all the facts to conclude that there was a voluntary consent. When a court "bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses." *United States v. Sutton,* 850 F.2d 1083, 1086 (5th Cir.1988). Even if we were convinced that the opposite finding would have been made had we been the fact finders, we cannot reverse the circuit court finding "that consent was given voluntarily unless" we can say "that the view of the evidence taken by the" court was "implausible in light of the entire record." *United States v. Lattimore,* 87 F.3d 647, 651 (4th Cir.1996) (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–

74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)).

[¶ 13.] In reviewing the totality of the surrounding circumstances, we detect nothing implausible about the circuit court's findings. On the date of the search, defendant was twenty-three years old and had prior experience with the legal system. He was no "newcomer" to the law. *Watson,* 423 U.S. at 424–25, 96 S.Ct. at 828. Nothing in the record indicates that a coercive or intimidating atmosphere induced him to act against his will. He was stopped in the early morning hours for speeding on Interstate 90. Defendant apparently knew the procedure because as the officer approached his rental car, defendant was already holding out his driver's license and other papers. Defendant accompanied the officer back to the patrol car to receive a warning citation.

[¶ 14.] In the course of this brief stop and following routine questioning, defendant gave his consent to search the car. Defendant said either "Um, yeah, why, did you smell something?" or "Um, well, sure, why did you smell something?" Although not recalling the exact wording, the officer testified consistently that defendant gave his consent. Hansen reported that on the way to the patrol car, defendant asked if he "could get a warning and be on his way." While in the patrol car he asked, " 'Is all this necessary, can I just get a warning and go?' " (Hansen's affidavit). Defendant "again asked if all this was necessary and if he could just get a warning" (Hansen's report). The trial court found that defendant's hesitant response was "Um, yeah, why, did you smell something?" Based on this response, the court found voluntary consent. Furthermore, as the trial court noted, defendant made no protest while his vehicle was being

searched.[3] *See State v. Sheehy*, 2001 SD 130 ¶ 12, 636 N.W.2d 451, 454. Based on this record, the conclusion that defendant's oral consent was given voluntarily is adequately supported. Thus, the circuit court's denial of defendant's motion to suppress must be upheld.

[¶ 15.] We have heretofore held that where the State relies on consent to conduct a search, it has the burden to prove by clear and convincing evidence that the consent was valid. *State v. Almond*, 511 N.W.2d 572, 574 (S.D.1994) (citations omitted). To bring ourselves into conformance with Supreme Court Fourth Amendment standards for reviewing consent searches, we have recently adopted the preponderance of the evidence analysis and abandoned our old clear and convincing standard. *State v. Akuba*, 2004 SD 94, 686 N.W.2d 406; *see also United States v. Matlock*, 415 U.S. 164, 177–78, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 n14 (1974) (burden on prosecution to show voluntariness of consent to search). This is the burden used consistently with other prosecution burdens on similar issues. *Colorado v. Connelly*, 479 U.S. 157, 167–69, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986) (same burden on prosecution to show defendant waived *Miranda* rights); *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (burden to show inevitable discovery of evidence obtained by unlawful means); *Lego v. Twomey*, 404 U.S. 477, 484, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972) (prosecution must prove at least by a preponderance of the evidence that confession was voluntary).

[¶ 16.] Affirmed.

[¶ 17.] GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶ 18.] SABERS and MEIERHENRY, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 19.] I dissent for the same reasons set forth in my dissent in *State v. Akuba*, 2004 SD 94, 686 N.W.2d 406. I also join the dissent of Justice Meierhenry.

MEIERHENRY, Justice (dissenting).

[¶ 20.] I respectfully dissent. I would reverse the trial court's denial of the Motion to Suppress. The only issue in this case is whether the trial court's finding that the defendant voluntarily consented to a search of his vehicle is clearly erroneous. We have consistently applied the standard of review as follows:

Our standard of review for a trial court's grant or denial of a motion to suppress is abuse of discretion. *State v. Anderson*, 1996 SD 59, ¶ 8, 548 N.W.2d 40, 42. An abuse of discretion is discretion "exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Gesinger*, 1997 SD 6, ¶ 8, 559 N.W.2d 549, 550. Further, it is well settled that,

A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. This Court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.

*State v. Belmontes*, 2000 SD 115, ¶ 9, 615 N.W.2d 634, 637 (internal citations omitted).

---

3. Hansen testified that he based consent solely on the statement, "Um, yeah, why, did you smell something?" but he also admitted this statement was given hesitantly.

*State v. Hullinger,* 2002 SD 83, ¶ 9, 649 N.W.2d 253.[4] Based on the record in this case, substantial evidence does not exist to support the trial court's finding and the trial court abused its discretion by denying the motion to suppress.

[¶ 21.] In determining the basis of the trial court's decision, we look to its findings. The majority says that "the trial court weighed all the facts to conclude that there was a voluntary consent." The majority opinion balances on the trial court's advantage of observing the demeanor of the witnesses. A review of the findings entered by the trial court, however, raises questions as to whether the trial court based its decision on the demeanor of the witnesses. Many of the "findings of fact" are merely renditions of conflicting testimony. The trial court's findings and conclusions acknowledge the differences between the defendant's testimony and the officer's, the variations in the officer's written documents and his testimony as to the words of consent, and the officer's denial and then later acknowledgement that he made a statement about drug "interdiction" and department funding to the defendant. The trial court found that the defendant testified that he did not give the officer consent to search. The court also found that the officer testified that the defendant did give him consent. The trial court does not adopt one or the other as its own finding of fact.

[¶ 22.] The trial court's contradictory facts do not support a determination that the consent was voluntary, i.e. given freely, intelligently, unequivocally, and specifically. *State v. Hanson,* 1999 SD 9, ¶ 25, 588 N.W.2d 885, 891. The facts, as recited, actually indicate the defendant's consent was hesitant and equivocal and that the officer offered several different versions of defendant's response and different versions of what he told the defendant. The trial court's findings relevant to voluntary consent are as follows:

6. That the stop, detention, search, or interrogation of the defendant was not audio taped or video taped;

. . . .

16. That the defendant observed the officer in uniform, in a clearly marked vehicle and that the defendant was placed in the back seat of the patrol vehicle during a portion of the search and that he was prevented from leaving the back seat;

17. That the officer asked if he could search the defendant's vehicle;

18. That the officer testified at the preliminary hearing that the defendant's response was "somewhat hesitant and then saying yes that I could search his vehicle and then he asked if I had smelled something";

19. That the officer wrote a verbatim account of the defendant's words of consent in an affidavit in support of a search warrant to conduct a further search of the vehicle; that the affidavit was submitted to 7th Circuit Court Judge Janine Kern on July 2, 2002, and the language of consent included in that affidavit stated, "Um, yeah, why, did you smell something?";

20. That the officer wrote a purportedly verbatim statement of the defen-

---

4. The majority diverges somewhat from this standard of review and, instead, cites to a 1996 Fourth Circuit federal case which uses an "implausibility test" for reviewing a trial court's view of the evidence. *US v. Lattimore,* 87 F.3d 647, 651 (4th Cir.1996) (an en banc decision with 6 judges dissenting involving both an oral and written consent to search). This Court has not previously relied upon this standard. Our standard has long been established and should be applied in this case rather than substituting language from a federal case.

dant's words of consent in his report dated July 2, 2002, in which he stated the quoted language as "Um, well, sure, why did you smell something?";

21. That at the preliminary hearing, the officer testified that the defendant said, "Yes, you can search my car;" but when confronted on cross-examination the officer admitted these words of consent were not stated by the defendant;

22. That in testimony at the preliminary hearing the officer denied that he told the defendant that his request to search the car or to use a drug dog was associated with some funding that the police department could receive;

23. That at the evidentiary hearing in this matter, the officer acknowledged on redirect by the State that he did mention to the defendant "that our department likes to see our efforts of drug interdiction and there are opportunities for departments to receive funding for new equipment, any type of equipment, due to those efforts";

24. That the defendant testified at the evidentiary hearing that his reply to the officer's inquiry whether he could search the car was "Why, did you smell something?" with no affirmative answer;

25. That the defendant testified that the officer made a comment about the department receiving funding for drug searches then he got out of the patrol car and went to search the defendant's rental car;

. . . .

34. During the course of issuing a warning citation and checking the defendant's license status, the officer asked for the defendant's consent to search the vehicle;

35. The defendant voluntarily consented to the search of his vehicle.[5]

[¶ 23.] The trial court's statements at the motion hearing and court trial are also inconclusive. The trial court briefly stated on the record at the conclusion of the suppression hearing its finding that "there was an affirmation that the search could continue—could be made." The trial court stated:

> Its sort of incredible frankly for me to believe that if the question was asked and it was never answered, that the defendant would have raised some kind of questions, inquiry, objection, statements, raised an issue of some sort concerning the search being conducted. And therefore the Court finds that there was a request of the officer for the search and there was an affirmation that the search could continue—could be made.

Later, at the court trial the judge added these comments:

> The Court has previously ruled on the suppression issues, will again renew its decision on those suppression issues. The Court has found that there was consent by the defendant. I understand the questions of credibility. There's nothing to find otherwise.

We have previously stated that "whether findings and conclusions are formally entered or orally made on the record, they must be such that there is no room for speculation and conjecture concerning what the trial court found or concluded." *State v. Hartley,* 326 N.W.2d 226, 228 (S.D. 1982). "It is not our function to make findings or conclusions for the trial court or to surmise what was intended; rather, it is our province to determine if the findings are supported by evidence and if the

---

5.  The findings of fact and conclusions of law for the suppression motion were submitted to the judge after the court trial. They were signed four months later.

conclusions are warranted by findings." *Id.* at 228.

[¶ 24.] Obviously missing from the trial court's analysis is any reference to the totality of the circumstances. I agree with the majority that a court must look at the totality of the circumstances in determining whether consent to search is free and voluntary. *State v. Almond,* 511 N.W.2d 572, 573 (S.D.1994). Besides the hesitant statement of the defendant, the only other conceivable factor considered by the trial court was the defendant's lack of objection to the search. Although the trial court referenced defendant's lack of objection orally at the end of the motion hearing, lack of objection is not found in the written findings. The court does enter the written finding "that the defendant was placed in the back seat of the patrol vehicle during a portion of the search and that he was prevented from leaving the back seat." The hearing evidence established that once the defendant responded to the officer's request to search, he was immediately placed in the back seat of the patrol car. The officer further testified that the back doors were locked and the defendant would not have been able to get out. Under these facts, defendant had no meaningful opportunity to object.

[¶ 25.] The majority notes that the defendant's age and prior legal experience with the law are additional circumstances supporting voluntary consent. Whether the trial court considered these other factors is not evident from the oral or written findings. The majority also notes the lack of a coercive atmosphere. Here again, the trial court makes no specific finding on whether the atmosphere was or was not coercive. In fact, findings 23 and 25 may actually reflect coerciveness in regard to the officer's statements about department funding being tied to drug searches. Furthermore, there is no tape of the stop from which a court could discern the atmosphere surrounding the incident or exactly what was said by the officer or the defendant.

[¶ 26.] The State's burden is to show voluntariness by clear and convincing evidence that "consent was free, intelligent, unequivocal and specific." *State v. Hanson,* 1999 SD 9, ¶ 25, 588 N.W.2d 885, 891. Applying our standard of review, and considering "the evidence in a light most favorable to the trial court's decision", the trial court's decision "lacks the support of substantial evidence," and "considering the entire record," I am "left with a definite and firm conviction that a mistake has been made." *Hullinger,* 2002 SD 83, ¶ 9, 649 N.W.2d 253. The trial court's findings are not supported by the evidence and the conclusions of law are not warranted by the findings. The trial court's decision should be reversed.