#24560-aff in pt & rem in pt-JKK

**2008 SD 53**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

JOHN SCOTT LEIGH,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
JERAULD COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

CASEY N. BRIDGMAN
Jerauld County State's Attorney

JEFF ADEL
Jerauld County Deputy State's Attorney          Attorneys for plaintiff
Wessington Springs, South Dakota          and appellant.

JEFF BURNS of
Churchill, Manolis, Freeman
 Kludt, Shelton & Burns          Attorneys for defendant
Huron, South Dakota          and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 26, 2008

OPINION FILED **06/25/08**

#24560

KONENKAMP, Justice

[¶1.] During a routine traffic stop, a highway patrol officer asked the driver, "You mind if I pat you down to make sure you don't have any knives or anything?" The driver replied, "Yeah." Taking this ambiguous response as consent, the trooper patted down the driver's pockets. When the trooper felt a hard object, he reached in to retrieve it. He removed a hollow part of a pen containing a white powder residue, later tested to be methamphetamine. After he was arrested and charged with unauthorized possession of a controlled substance, the driver moved to suppress the evidence on the ground that he did not consent to the search of his person. The circuit court granted the motion. We affirm in part, and remand in part for further proceedings to determine if the patdown could have been justified on grounds of officer safety.

**Background**

[¶2.] On June 16, 2006, John Scott Leigh was pulled over by South Dakota Highway Patrolman Brian Biehl because the trailer Leigh was pulling did not have working taillights. As Trooper Biehl approached Leigh's vehicle, he noticed that the taillights were not working because they were not properly connected. He also noticed that Leigh did not have a front license plate. Leigh showed the trooper a valid Arizona temporary license plate located on the back ledge of the vehicle, by the rear window. It was not affixed in accord with SDCL 32-5-98.

[¶3.] Trooper Biehl asked Leigh to accompany him to his patrol car. During the walk to the car, Leigh placed his hands in his pockets. What occurred next is in dispute. According to Trooper Biehl, when he noticed Leigh put his hands in his

pockets, he asked him to remove them. Leigh complied. The trooper later recounted that after Leigh put his hands in his pockets a second time, he asked Leigh what was in his pockets. Leigh replied, "Nothing." Trooper Biehl testified that he asked Leigh, "Do you mind if I pat you down to make sure you don't have any knives or anything then?" Leigh responded, "Yeah." Trooper Biehl took this response as consent.

[¶4.] According to Trooper Biehl, before the patdown neither one of them was in the patrol car. During the patdown the trooper felt a hard object in Leigh's pocket that the trooper thought could be a weapon. He removed the object from Leigh's pocket, and saw it was part of a hollow pen tube. Trooper Biehl examined the tube twice, and during the second visual examination, noticed a white powder residue. The residue later tested positive for methamphetamine.

[¶5.] Leigh related a different version of events. According to Leigh, Trooper Biehl never asked him to remove his hands from his pockets. He also insisted that before the search, he and the trooper were in the patrol car, at which time Trooper Biehl asked him what was in his pockets. Leigh agreed that he responded, "Nothing," but then contended that Trooper Biehl said, "You've got something right there." After that remark, Leigh said the trooper asked to pat him down "to make sure no knives or anything." Leigh agreed that he replied, "Yeah," but insisted that he meant "yeah, I mind."

[¶6.] There is no dispute that Trooper Biehl placed his hand in Leigh's pocket and removed the pen tube. After this, and the search of his vehicle, Leigh was arrested and charged with unauthorized possession of a controlled substance.

He moved to suppress the evidence, asserting that Trooper Biehl performed an illegal search of his person, extended the traffic stop without specific and articulable suspicion of a violation, and questioned him in custody without giving him Miranda warnings. After a hearing, the circuit court granted Leigh's motion to suppress on the ground that the State failed to establish that Leigh consented to the search. The State appeals contending that (1) the court's findings of fact were clearly erroneous, (2) the court applied the wrong legal standard, and (3) the search should have been upheld because Trooper Biehl's patdown was for safety reasons.

## Standard of Review

[¶7.]        We review decisions on motions to suppress for a violation of a legal right under the de novo standard. State v. Tiegen, 2008 SD 6, ¶14, 744 NW2d 578, 585 (citing State v. Stevens, 2007 SD 54, ¶5, 734 NW2d 344, 346 (quoting State v. Hess, 2004 SD 60, ¶9, 680 NW2d 314, 319 (quoting State v. Herrmann, 2002 SD 119, ¶9, 652 NW2d 725, 728 (citations omitted)))). "We will not disturb a circuit court's findings of fact unless they are clearly erroneous in light of the entire record." State v. Lockstedt, 2005 SD 47, ¶14, 695 NW2d 718, 722 (citing State v. Guthrie, 2001 SD 61, ¶56, 627 NW2d 401, 423 (citation omitted); SDCL 23A-32-9).

## Analysis and Decision

[¶8.]        The State argues that the circuit court's findings of fact omit important and relevant facts, and as a result, do not reflect what actually happened. Although the State asserts that the court's findings are "technically true," it argues that they are nevertheless clearly erroneous because they are incomplete. According to the State, the court failed to find, among other things, that (1) Trooper Biehl was

concerned for his safety and the patdown was necessary to check for the presence of concealed weapons, (2) the trooper was alone at the time of the stop, (3) during the patdown, Leigh neither by words nor gestures indicated that he was not consenting, and (4) when he patted Leigh down, Trooper Biehl felt a hard object in Leigh's pocket.

[¶9.] With Trooper Biehl's testimony, the videotape, and the parties' submissions, the court made the following findings:

1. On June 16, 2006, Trooper Bryan Biehl made a routine traffic stop as Defendant's lights on a trailer he was pulling were not working.

2. Upon making contact with the Defendant, the parties immediately determined the tail lights were not working because they were not properly plugged into the vehicle and the situation was remedied.

3. Trooper Bryan Biehl also observed that there was no visible license plate on the vehicle.

4. Trooper Bryan Biehl asked the Defendant for his driver's license and requested that he walk back to the patrol car with him.

5. It was a rainy day and the Defendant was dressed in a tank top and shorts.

6. On the way to the patrol car the Defendant put his hands in his pockets.

7. Once the parties were inside the patrol car, Trooper Bryan Biehl asked the Defendant what he had in his pockets and also asked him if he minded if he patted him down for weapons?

8. The Defendant answered "yeah".

9. Trooper Bryan Biehl then patted him down and inserted his hand inside the Defendant's front pant pocket and found a piece of a pen.

[¶10.] Although there is a videotape of the stop, it does not show the interaction between Trooper Biehl and Leigh. Because the parties disputed what

physically occurred in relation to the audio account of the stop, the findings of the court are in part premised on credibility. "When a court 'bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses.'" State v. Castleberry, 2004 SD 95, ¶12, 686 NW2d 384, 388 (quoting United States v. Sutton, 850 F2d 1083, 1086 (5thCir 1988)) (alteration in *Castleberry*).

[¶11.]     At the suppression hearing, Trooper Biehl testified that neither he nor Leigh was in the patrol car when the trooper asked for consent to search. Trooper Biehl also testified that after he asked Leigh to remove his hands from his pockets, Leigh did so, but immediately put them back in. The trooper said this made him uncomfortable, and he asked Leigh for consent to pat him down. During cross examination, Trooper Biehl testified that he did not recall specifically asking for consent to search Leigh's pockets, but possibly for consent to conduct a patdown search. After the videotape was played for the court during the trooper's cross examination, the trooper explained that Leigh was starting to get into the vehicle and placed his hands in his pockets, but neither of them was inside the vehicle yet. Trooper Biehl testified that before getting into the vehicle he asked Leigh what he had in his pockets and requested consent to conduct a patdown search.

[¶12.]     Whether the trooper and Leigh were inside the vehicle during the patdown, as the circuit court found, cannot be determined conclusively from the videotape. Trooper Biehl and Leigh can be seen walking back to the patrol car. The sound of rain and wind can be heard. After the trooper and Leigh walk outside the

camera's visual range, it is possible that they entered the patrol car because the ability to hear the rain and wind is greatly diminished, as if the two were inside the vehicle. Therefore, the court's finding that they were in the patrol car is supportable.

[¶13.] The court's other findings are also supported in the record. The court found that Leigh put his hands in his pockets, as is evident from the videotape. The court then found that Trooper Biehl asked Leigh if he minded if he patted him down for weapons. On the videotape, Trooper Biehl asked Leigh, "What have you got in your pockets, Sir?" Leigh replied, "Nothing." Trooper Biehl stated, "Nothing (inaudible). . . you've got something right here. Hang on just a second. K. K, You mind if I pat you down to make sure you don't have any knives or anything?" Leigh responded, "Yeah." Trooper Biehl then conducted the search. Based on our review of the record, the court's findings are not clearly erroneous. That the court did not include findings that Trooper Biehl was alone at the time of the search, was concerned about his safety, or felt a hard object in Leigh's pockets does not render the court's ultimate findings incomplete.

[¶14.] Next, the State contends that the court applied an incorrect legal standard. The court noted that the State had "the burden of establishing voluntariness by a preponderance of the evidence." However the State insists that voluntariness was not at issue. Rather, the issue was whether consent was given at all, which requires an examination of Leigh's words and conduct to determine if those words and that conduct would lead a reasonable person to believe that Leigh consented. *See Castleberry*, 2004 SD 95, ¶10, 686 NW2d at 387.

[¶15.]    In *Castleberry*, the defendant claimed that he did not consent to a search of his vehicle. *Id.* ¶8. The State argued that Castleberry consented when he responded to the officer's request to search with, "Um, yeah, why, did you smell something?" or, "Um, well sure, why did you smell something?" *Id.* ¶14. On appeal, we examined the totality of the circumstances to determine whether the alleged consent was freely and voluntarily given. *Id.* ¶9. Castleberry had prior experience with the legal system. *Id.* ¶13. There was nothing intimidating or coercive to indicate he was acting against his will. *Id.* Although the officer could not confirm whether Castleberry said, "Um, yeah, why did you smell something," or, "Um, well sure, why did you smell something," he was consistent that consent was given. *Id.* ¶14. Furthermore, at no time during the search did Castleberry protest. *Id.* In light of the circumstances and the court's ability to judge the credibility of the witnesses, we upheld the court's decision that Castleberry consented under our clearly erroneous standard of review.

[¶16.]    Here, we are faced with a similar equivocal answer to an officer's request to conduct a warrantless search. However, we have a different result: the circuit court found no valid consent. Our standard of review remains the same. We will not reverse "[e]ven if we were convinced that the opposite finding would have been made had we been the fact finders," unless in light of the entire record we are left with a definite and firm conviction that a mistake has been made. *Id.* ¶11; *see also Lockstedt*, 2005 SD 47, ¶14, 695 NW2d at 722. Moreover, we view the evidence in a light most favorable to the court's findings. *Lockstedt*, 2005 SD 47, ¶14, 695 NW2d at 722 (citing State v. Tilton, 1997 SD 28, ¶21, 561 NW2d 660, 665).

[¶17.]     Searches conducted with consent are permitted as an exception to the warrant requirement. *Castleberry,* 2004 SD 95, ¶8, 686 NW2d at 387. When the State relies on consent for a search, it must prove that the consent was valid by a preponderance of the evidence. *Id.* ¶15. Whether consent was given depends not on "whether [defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." *Id.* ¶10 (quoting United States v. Jones, 254 F3d 692, 695 (8thCir 2001)) (alteration in *Castleberry*). "'Consent can be inferred from words, gestures, and other conduct.'" *Id.* (citation and alteration omitted). The process of determining whether consent was valid (i.e., given at all) requires an examination of the totality of the circumstances. *See id.* ¶9.

[¶18.]     Although the court did not state that it was examining Leigh's conduct and words to determine if they would lead a reasonable person to conclude that there was consent, the court did find that Leigh's answer of "yeah" was ambiguous and required "further clarification." Moreover, the court ruled that the State failed to meet its "burden to establish that the search performed by Trooper Bryan Biehl was consensual." These are, in effect, conclusions by the court that Leigh's words and conduct would not have led a reasonable person to believe consent was given.

[¶19.]     Nonetheless, the State contends that the totality of circumstances surrounding the trooper's request indicate that Leigh's response constituted consent. Specifically, the State asserts that during the search Leigh did not protest or object when Trooper Biehl searched him. The court did not make a finding on this point. Yet, even if we assume the truth of the State's claim, an absence of

protest or objection alone does not necessitate a conclusion that consent was given. *See* Bumper v. North Carolina, 391 US 543, 548-49, 88 SCt 1788, 1792, 20 LEd2d 797 (1968). The State had the burden of establishing valid consent by a preponderance of the evidence and "mere acquiescence to a show of lawful authority is insufficient to establish voluntary consent." *Id.* Based on our review of the record, the court's conclusion that the State failed to meet its burden does not leave us with a definite and firm conviction that a mistake was made.

[¶20.] The State also claims that if consent is not found, the search was legal based on Trooper Biehl's expressed safety concerns with the possible presence of a concealed weapon. This issue was not argued to the court at the motion hearing, nor is there a ruling for us to review. "We have long held that issues not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on appeal." City of Watertown v. Dakota, Minn. & E. R.R. Co., 1996 SD 82, ¶26, 551 NW2d 571, 577 (citing Keegan v. First Bank of Sioux Falls, 519 NW2d 607, 615 (SD 1994)) (additional citations omitted).

[¶21.] Still, the State preserved this issue by inserting in its proposed findings of fact and conclusions of law that Trooper "Biehl reasonably believed his safety might be compromised by the presence of weapons concealed on" Leigh, and Leigh's "action in putting his hands in his pockets gave Patrolman Biehl reasonable grounds to believe that his safety might be compromised by the presence of concealed weapons, so that a pat-down search of [Leigh] was justified even without consent." *See* Jager v. Ramona Bd. of Educ., Ramona Sch. Dist., 444 NW2d 21, 26-27 (SD 1989) (issue preserved by filing proposed findings and conclusions and

objections). Therefore, although we affirm the court's decision on the issue of consent, we remand for a determination by the court on whether, absent consent, the search was valid on the ground that the circumstances gave rise to a reasonable belief that the trooper's safety may have been compromised by a concealed weapon. *See* Minnesota v. Dickerson, 508 US 366, 113 SCt 2130, 124 LEd2d 334 (1993); Terry v. Ohio, 392 US 1, 88 SCt 1868, 20 LEd2d 889 (1968); *see also* State v. Sleep, 1999 SD 19, 590 NW2d 235.

[¶22.]    Affirmed in part and remanded in part for further proceedings.

[¶23.]    GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶24.]    SABERS and MEIERHENRY, Justices, concur in part and dissent in part.


MEIERHENRY, Justice (concurring in part and dissenting in part).

[¶25.]    I agree with the conference opinion that Judge Erickson's order to suppress based on lack of consent should be affirmed. I disagree that we should remand for additional findings as to whether the search was valid because of officer safety issues. Even though the State may have preserved the issue on appeal, the State's evidence to the circuit court does not support its proposed finding.

[¶26.]    The officer, in an answer to a question from the court, stated that Leigh's behavior or actions were not threatening. He testified that when Leigh put his hands in his pockets it made him uncomfortable as to whether or not he had a weapon or something in his pockets. However, when the court questioned him further he indicated as follows:

> Court: Other than he put his hands in his pockets, and took them out when requested and then put them back in, was there anything else, any suspicion that came at that your mind?
> Officer: No.
> Court: Nothing else? I mean he wasn't acting nervous?
> Officer: He was acting nervous, but as far as threatening wise, no.

The court also made the following comments regarding the officer's suspicion:

> My concerns go back to the very beginning. I mean this is a routine stop for a taillight violation. It's pretty clear immediately that they knew what the reason was. It was unplugged. They plugged it in. It's getting a warning ticket at best.
>
> And as the guy walks back to the vehicle, he sticks his hands in his pocket. And I remember his thumbs on the outside of the pants. The officer testified that he asked him to take his hands out of his pockets and the guy did and put them back in. I don't remember hearing the officer ask him to do that [on the tape]. And looking at the way it was done – or the way the hands were in the pockets, I certainly don't think any suspicion about that.
>
> So I'm going to let you brief it, folks. It's – my first concern is whether there was even a valid reason based upon that scenario, that the officer had a right to even ask for a pat down. That's what starts this whole thing and – I know that at a certain point in time an officer can ask for a pat down search, but I don't know that there was enough information to rise to the level where you can even do that in this case.
>
> . . .
>
> There are times and reasons why an officer can do a pat down, but watching the way the gentleman walked back to the vehicle, with his hands in his pocket, that's something all of us do. It's a cold rainy day. So I want to you brief that question.

The evidence, as the State presented it at the suppression hearing, does not support a finding that the search was valid due to officer safety concerns. Consequently, there would be no reason to remand on this issue. The circuit court's order should be affirmed.

[¶27.]     SABERS, Justice, joins this special writing.

-11-